**EDWARDSVILLE NATIONAL BANK AND TRUST COMPANY, Administrator of the Estate of Chadwick Slone, Plaintiff-Appellant,**

v.

**MARION LABORATORIES, INC., et al., Defendants-Appellees.**

No. 86–1779.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 16, 1986.

Decided Jan. 8, 1987.

Brian K. Carroll, Johnson, Carroll & Griffith, P.C., Evansville, Ind., for plaintiff-appellant.

Stephen Hensleigh Thomas, Robert Thomas Bodkin, Statham, McCray, Thomas & Krohn, Evansville, Ind., for defendants-appellees.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Walker and Sheila Slone live in Galatia, Illinois. On March 2, 1983, they took their young son Chadwick, who had an ear infection, to Kishor Bhatt, a physician in Evansville, Indiana. Dr. Bhatt prescribed Bactrim, a medication with a sulfa base. The prescription was filled by a pharmacy in Harrisburg, Illinois. Chadwick developed a rash, and his parents returned to Indiana on March 14 to visit Douglas Palmenter, Dr. Bhatt's partner. By then Chadwick had severe blisters, and Dr. Palmenter admitted Chadwick to St. Mary's Medical Center in Evansville. Palmenter, Bhatt, and a third physician decided to administer Silvadene salve, another medication with a sulfa base. Chadwick's blistering accelerated, and his skin later sloughed off (this is called Stevens-Johnson syndrome). By March 23 Chadwick was dead.

The administrator of Chadwick Slone's estate filed this diversity action in Illinois against St. Mary's Medical Center, its parent corporation, the three physicians, and the manufacturers of the two drugs. All contended that the district court lacked personal jurisdiction over them. None is a resident of Illinois, and the acts in question occurred in Indiana. The defendants asked the district court to dismiss the action or transfer it under 28 U.S.C. § 1404(a) to the Southern District of Indiana, which they asserted is a more convenient forum. Without acting on the motions to dismiss, the district court in Illinois transferred the case under § 1404(a), which permits transfers "in the interest of justice" to any district in which the suit could have been filed.

The district court in Indiana then concluded that the case should have been transferred under 28 U.S.C. § 1406(a), which allows a court to dismiss or transfer a case filed in the wrong venue. Section 1404(a) was the wrong statute, the Indiana court thought, because the court in Illinois

lacked "subject matter jurisdiction over all the parties"—by which we assume the court must have meant personal jurisdiction. But see *Cote v. Wadel,* 796 F.2d 981, 984–85 (7th Cir.1986) (§ 1404(a) may be used to transfer a case even though the transferor court does not have personal jurisdiction over all defendants) (dictum). A transfer under § 1404(a) changes venue but not law; the transferee court must apply the transferor's choice-of-law rules. *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Coffey v. Van Dorn Iron Works,* 796 F.2d 217 (7th Cir.1986). The district court in Indiana believed that a transfer under § 1406(a) should be treated as the equivalent of a dismissal in the original forum, followed by a refiling in the transferee state. This meant that Indiana choice-of-law rules would be applied. (The parties apparently agree that a § 1406(a) transfer would have this effect, and we therefore do not explore the matter.) Indiana follows the *lex locus delicti* approach in tort cases, see *Snow v. Byrne,* 449 N.E.2d 296 (Ind.App.1983); *Maroon v. Department of Mental Health,* 411 N.E.2d 404 (Ind.App.1980), bringing Indiana's substantive law into play. Indiana Code § 34–1–1–8 requires that a wrongful death action be brought by a child's parents. See also *Childs v. Rayburn,* 169 Ind.App. 147, 346 N.E.2d 655, 660 (1976). Indiana Code § 16–9.5–9–2 requires malpractice claims to be submitted to a medical review panel before filing suit. The court therefore dismissed the complaint without prejudice against the physicians and hospital, allowing the Slones to submit their claim to the review panel. It gave the administrator leave to amend the complaint to name the Slones as the parties in the products liability claim against the manufacturers of the drugs.

We have an interlocutory appeal from this order under 28 U.S.C. § 1292(b). The district court certified the order for appeal under this section, and a motions panel of this court accepted the case. Plaintiff asserted that the case presents an important question about a transferee court's power to change the statutory ground on which a case has been transferred. According to Chadwick's administrator, the transferee court is forbidden by the law of the case to disagree with the transferor court's decision, a position that has some support. See *In re Cragar Industries, Inc.,* 706 F.2d 503, 505 (5th Cir.1983); *Hayman Cash Register Co. v. Sarokin,* 669 F.2d 162 (3d Cir.1982). But see *Christianson v. Colt Industries Operating Corp.,* 798 F.2d 1051 (7th Cir.1986) (when a transfer would require a court to decide a case over which it lacks jurisdiction, it may refuse to accept the case). If the transferee court must accept the stated ground of transfer, then *Van Dusen* compels the transferee court to apply the choice-of-law rules of the transferor forum. The district court in Indiana apparently believed that its power to choose a new ground of transfer presented a significant question. It quoted the language of § 1292(b) and continued:

> IT IS FURTHER ORDERED that the 1292(b) certification relates only to *Van Dusen v. Bairack* [sic], 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), and its relation to the issue at bar.

The question whether a transferee court may decide for itself on what ground the case should have been transferred is important only when the choice-of-law rules of the two forum states select different substantive laws. The defendants say that the question is not properly presented, because Illinois choice-of-law rules would select Indiana's substantive law. The outcome therefore is the same whether the transfer is under § 1404(a) or § 1406(a). The district court's attempt to limit the questions open on appeal does not prevent us from addressing this contention. The statute refers to certifying an "order" for interlocutory appeal. It is not a method of certifying questions. The question is the *reason* for the interlocutory appeal, but the thing under review is the order. See *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 246 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); *CAB v. Tour Travel Enterprises, Inc.,* 605 F.2d 998, 1003 n. 12 (7th Cir.1979).

See also 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure* § 3929 at 144–45 (1977). Were things otherwise, there would be substantial risk of producing an advisory opinion. If nothing turns on the answer to the question, it ought not be answered; on the other hand, once the interlocutory appeal has been accepted and the case fully briefed, it may be possible to decide the validity of the order without regard to the question that prompted the appeal. This is such a case. Nothing turns on the answer to the question, which we therefore do not give. The order is correct for a different reason, one available as a basis of affirmance. See *Massachusetts Mutual Life Ins. Co. v. Ludwig*, 426 U.S. 479, 96 S.Ct. 2158, 48 L.Ed.2d 784 (1976).

The district court selected Indiana law (and § 1406(a)) on the basis of allegations in plaintiff's complaint. The complaint and other submissions by plaintiff—the basis of all facts in this opinion—demonstrate that Indiana's law applies. Every event of interest to this case happened in Indiana. Dr. Bhatt diagnosed Chadwick's ear infection and prescribed Bactrim there. Dr. Palmenter examined the rash and admitted Chadwick to a hospital in Indiana, where two Indiana physicians and one from Tennessee decided to administer Silvadene salve. Chadwick stayed in Indiana until his death. If the diagnosis and treatment were negligent, the wrongs occurred in Indiana. The filling of the prescription for Bactrim by an Illinois pharmacy was not significant, and the pharmacy is not a defendant. If the drugs were improperly designed, manufactured, or packaged, those errors also occurred outside Illinois. The only acts that touched Illinois are the phone calls between Chadwick's parents and the physicians in Indiana. (The administrator contends that St. Mary's Medical Center advertises in Illinois, but it does not contend that the advertising has a causal relation to the events. By the administrator's own narrative, Chadwick was admitted to St. Mary's because Drs. Palmenter and Bhatt are on its staff, not because Chadwick's parents asked that he be taken there.)

■ Illinois follows the "most significant contacts" (or "most significant relationship") approach of *Restatement (Second) of Conflict of Laws* § 145. *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). Under this approach the courts of Illinois select the law of the place of the accident unless another place has a more significant relation with the occurrence and the parties, and in making the decision Illinois courts consider where the conduct and injury occurred, where the parties live and do business, and where the relationship of the parties is centered. Status as well as activity therefore matters. The pleadings and contentions of the plaintiff demonstrate that the most significant contacts require the application of Indiana's law. The physician and hospital defendants all practice in Indiana and, we expect, attempt to conform their conduct to the demands of the law of that state. (The drug manufacturers are located outside Indiana, but they apparently accept the application of Indiana law to this case.) The conduct and injury took place in Indiana. The relationship of the Slones and the defendants is centered in Indiana. Indeed, only the Slones' residence in Illinois provides any significant contact with Illinois.

This furnishes the plaintiff's principal argument. The administrator insists that the Slones' residence, the telephone calls between Illinois and Indiana, and the advertising in Illinois would allow Illinois to exercise personal jurisdiction over the defendants. This is a doubtful proposition, compare *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 403–04 (7th Cir.1986), with *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), but it is not the right inquiry. Illinois, like many states, has asserted personal jurisdiction to the extent the Constitution allows. It has not asserted that it will apply its own law whenever the Constitution allows. Sometimes a state will have personal jurisdiction but be unable to apply domestic law. E.g., *Phillips Petroleum Co. v.*

*Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). An attempt by Illinois to apply its law to this dispute would pose substantial questions under *Shutts.* But Illinois does not apply its law to cases such as this. Asked at oral argument for a case in which Illinois had applied its law to a similar situation, counsel could name none. The briefs are similarly silent, and we have found no case assisting plaintiff. They go the other way. E.g., *Ferguson v. Kasbohm,* 131 Ill.App.3d 424, 86 Ill.Dec. 605, 607–08, 475 N.E.2d 984, 986–87 (1st Dist. 1985); *Jackson v. Miller-Davis Co.,* 44 Ill. App.3d 611, 3 Ill.Dec. 161, 358 N.E.2d 328 (1st Dist.1976).

Illinois cases do contain phrases such as "there are strong incentives to apply the tort law of a jurisdiction where all the parties are domiciled, because this contact bears a strong relation to the policies and purposes sought to be achieved in the jurisdiction's tort law." *Estate of Barnes,* 133 Ill.App.3d 361, 368, 88 Ill.Dec. 438, 443, 478 N.E.2d 1046, 1051 (1st Dist.1985). The administrator's reply brief uses this quotation and continues: "Chadwick Slone had lived his entire life with his parents in Galatia, Illinois. Given the significant interest of Illinois in 'compensating its domiciliaries for injury,' and that it has little incentive to limit tort recoveries against non-domiciliaries, an Illinois court would, in all likelihood, apply Illinois law." No court in Illinois has taken such a soak-the-foreigners approach. The purpose of tort law is not to transfer money from those who reside outside the state to those within; it is not a form of taxation without representation. *Barnes* and similar cases say that Illinois will apply its law to a tort case when *all* parties are residents of Illinois; no case holds that the plaintiff's residence is enough to apply local law.

Tort law compensates for injuries and also induces people to take care. Indiana has an interest in adjusting how much care, at what price. Indiana may believe that review by medical panels in advance of litigation will reduce the number of erroneous judgments and hence the cost of care (or the costs of excess precautions against suits); the lower costs will be passed on to patients. Over the long run patients in Indiana cannot both benefit from the lower cost of service and escape the mechanism that made the reduction possible. Courts of Illinois would appreciate that greater compensation, given an injury, will interfere with a mechanism that may reduce the cost of service. We do not share the plaintiff's assessment of the courts of Illinois as short-sighted and interested only in producing the largest possible judgments for residents.

AFFIRMED.