TENSOR GROUP, INC., an Illinois corporation, Plaintiff,

v.

ALL PRESS PARTS & EQUIPMENT, INC., a Delaware corporation; and Randal Coakley, Jr., an individual, Defendants.

No. 96 C 4620.

United States District Court, N.D. Illinois, Eastern Division.

June 5, 1997.

Craig S. Fochler, Charles Robert Mandly, Jr., Lauren Smith Tashma, Joleen Schroeder Willis, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Plaintiff.

James P. O'Brien, Chapman & Cutler, Chicago, IL, Nicholas C. Zales, Zales Law Offices, Milwaukee, WI, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendants All Press Parts, Inc., and Randal Coakley, Jr.'s, motion to transfer venue pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court grants the motion to transfer venue.

### I. BACKGROUND [1]

Plaintiff Tensor Group, Inc. ("Tensor"), is an Illinois corporation with its principal place of business in Willowbrook, Illinois. Defendant All Press Parts & Equipment, Inc. ("All

---

1. The facts are taken from the complaint.

Press"), is a Delaware corporation with its principal place of business in Oshkosh, Wisconsin. Defendant Randal Coakley, Jr. ("Coakley"), who owns and operates All Press, is a Wisconsin resident and lives in Oshkosh, Wisconsin.

Both Tensor and All Press make and sell printing presses and printing press parts. Tensor alleges that it acquired copyrights to drawings and charts relating to the manufacture of printing press equipment, including a drawing entitled "Nipping Ring (FA 1438)," from DEV Industries, Inc., through DEV's bankruptcy proceedings. Tensor also alleges that it developed its own drawings and charts relating to the manufacture of its printing press equipment, and acquired other drawings and charts authored by Castle Engineering Company for Tensor, and for which Tensor received the copyrights.

Tensor alleges that All Press obtained a copy of the Nipping Ring drawing and distributed it to third parties, including at least one in this judicial district. Tensor also alleges that All Press misrepresented that some of Tensor's copyrighted works, including the Nipping Ring drawing, were its own, or that it had the right to copy, distribute, or otherwise use Tensor's copyrighted works, and made other factual misrepresentations about Tensor.

Based on these alleged actions of All Press, Tensor brought a four-count lawsuit against All Press, alleging copyright infringement under the Copyright Act, 17 U.S.C. § 501; unfair competition under the Trademark Act, 15 U.S.C. § 1125(a); unfair trade practices under the law of several states, including Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1–505/12, and the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1–510/7; and trade libel under the law of several states, including Illinois.

Defendants now move to transfer this case to the United States District Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1404(a).

## II. *DISCUSSION*

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party seeking to transfer under Section 1404(a) bears the burden of establishing that (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; and (3) the transfer is for the convenience of the parties and the witnesses and is in the interests of justice. *Id.; Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–20 (7th Cir. 1986).

The parties concede, for the purposes of this motion, that venue is proper in both this court and the United States District Court for the Eastern District of Wisconsin. Thus, the only question that remains is whether defendants can show that a transfer to the Eastern District of Wisconsin is for the convenience of the parties and the witnesses and is in the interests of justice. These factors are analyzed on an individualized, case-by-case basis. *See Coffey,* 796 F.2d at 219–20.

### A. *Convenience of the parties and witnesses*

In determining whether to transfer venue, the court seeks to promote both the private interests of the parties and the efficient administration of justice. *North Shore Gas Co. v. Salomon, Inc.,* 896 F.Supp. 786, 791 (N.D.Ill.1995) (citing *Black v. Mitsubishi Motors Credit of America, Inc.,* No. 94 C 3055, 1994 WL 424112, *2 (N.D.Ill. Aug. 10, 1994)). Private interests that may support a transfer include "the plaintiff's initial choice of forum; the relative ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses, and the costs of obtaining the attendance of witnesses; and the situs of material events." *Id.* (citing *Genden v. Merrill Lynch, Pierce, Fenner & Smith,* 621 F.Supp. 780, 782 (N.D.Ill.1985); *Club Assistance Program, Inc. v. Zukerman,* 598 F.Supp. 734, 736–37 (N.D.Ill.1984)).

#### 1. Parties

According to defendants, All Press is a business run by Coakley out of his home in

Oshkosh, Wisconsin. Coakley himself, with some help from his wife and a part-time employee in answering the phone, performs All Press's essential business functions. As defendants put it, All Press is a "classic one-man operation." (Defs.' Mot. to Change Venue at 4.) Tensor, in contrast, is a large corporation with extensive business facilities. Thus, defendants contend, the great disparity in resources between defendants and Tensor has caused defendants to suffer great inconvenience in having to defend this lawsuit in Chicago.

Tensor does not dispute these contentions. Thus, the court agrees with defendants that Wisconsin is a far more convenient forum for them than Illinois is, and further, that the burden on them to litigate here is far greater than the burden on Tensor to litigate in Wisconsin.

### 2. Witnesses

Defendants contend that Coakley will be the key witness in this lawsuit. They note that the majority of the discovery conducted by Tensor has focused on Coakley or All Press, and that the most extensive depositions that have been taken were those of Coakley. Tensor counters that Coakley has identified three Tensor officers that he intends to call as witnesses, as well as three third party witnesses from companies located in Illinois. Tensor claims that the only potential witnesses identified by either party reside in Illinois, except for one potential Tensor expert witness who resides in North Carolina.

As defendants correctly note, the court considers not only the number of witnesses to be inconvenienced, but also "the nature and quality of the testimony" to be given. *Pansophic Systems, Inc. v. Graphic Computer Serv., Inc.,* 736 F.Supp. 878, 881 (N.D.Ill. 1990). Tensor has not contradicted defendants' claim that most of the discovery has focused on Coakley and All Press, and that the several depositions of Coakley lasted far longer than the deposition of any other witness. These facts support defendants' claim that Coakley's testimony will be substantial and crucial to this case.

Moreover, since Coakley's testimony at trial likely will be substantial, Coakley will be called away from his "one-man operation" for a potentially long period. Coakley's lengthy absence from his business, which he alone runs, could have a damaging effect on his business.

Tensor does not specifically identify any unwilling witnesses who may have to be subpoenaed to attend trial. The court notes that at least four of the Illinois witnesses mentioned by the parties are Tensor employees, who presumably will testify on behalf of Tensor and therefore will not need to be compelled to attend trial. *See Pansophic,* 736 F.Supp. at 881 (citing *Peach Tree Bancard Corp. v. Peachtree Bancard Network, Inc.,* 706 F.Supp. 639, 640 (N.D.Ill.1989)) ("Generally, where witnesses are within the control of a particular party, it is likely that those witnesses will appear voluntarily. Such is the case when a party calls its employees as witnesses"). However, the court agrees with Tensor that because most third-party fact witnesses identified by the parties reside in Illinois, trial in this district would allow greater availability of compulsory process for the attendance at trial of unwilling witnesses.

Finally, the court notes that Milwaukee, where the Eastern District of Wisconsin court sits, is a relatively short drive from Chicago. Thus, the cost and burden of having Chicago-area witnesses attend trial in Milwaukee would not be extensive.

Based on the foregoing factors, the court finds that the nature and quality of Coakley's testimony, combined with the potentially damaging effect on All Press that might result from Coakley's extended absence, weigh in favor of trial in the Eastern District of Wisconsin, and far outweigh any inconvenience to witnesses and parties resulting from trial in Wisconsin.

### 3. Situs of material events

Defendants also contend that every allegation in Tensor's amended complaint relates solely to acts done by All Press or Coakley in Wisconsin, making Wisconsin the situs of material events. Tensor counters that many of the material events occurred in Illinois. However, the only act that Tensor identifies

that allegedly occurred in Illinois was an instance where Coakley faxed from Wisconsin an infringing drawing to a person, who then worked for another company but now works for Tensor, in Illinois. Tensor does not otherwise refute that most of the events at the heart of this litigation occurred in Wisconsin. Thus, it appears that Wisconsin is the situs of material events.

The court also gives defendants' argument credence because infringement actions "often focus on the activities of the alleged infringer, its employees, and its documents," *Habitat Wallpaper and Blinds, Inc. v. K. T Scott Ltd. Partnership*, 807 F.Supp. 470, 474 (N.D.Ill.1992) (in the context of patent infringement). Coakley has demonstrated, and Tensor has not controverted, that that is the case here, since discovery in this litigation has focused on All Press's business records and Coakley, which are in Oshkosh, Wisconsin.

### 4. Ease of access to sources of proof

Similarly, defendants contend that because the situs of material events was Wisconsin, most of the sources of proof in this case are located in Wisconsin. The court agrees. Since the key witness is Coakley, who lives and works in Wisconsin, and much of the document-oriented discovery has focused on All Press's business records, which are kept in Wisconsin, a trial in Wisconsin would allow easier access to sources of proof.

### 5. Plaintiff's choice of forum

While Tensor selected the Northern District of Illinois as its forum, and its choice of forum should be afforded substantial deference, it is "simply one factor among many to be considered." *Club Assistance Program*, 598 F.Supp. at 736. Moreover, the deference to which Tensor's choice of forum is entitled is reduced by the fact that Wisconsin is the situs of material events. *See Pansophic*, 736 F.Supp. at 881.

In sum, the factors relating to the convenience of the parties and witnesses weigh heavily in favor of a transfer of this case to Wisconsin.

### B. Interests of justice

The interests of justice factor "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Applied Web Systems, Inc. v. Catalytic Combustion Corp.*, No. 90 C 4411, 1991 WL 70893, *6 (N.D.Ill. Apr.29, 1991) (citing *Coffey*, 796 F.2d at 221; *Bally Mfg. Corp. v. Kane*, 698 F.Supp. 734, 739 (N.D.Ill.1988)). In analyzing this factor, the court considers such things as in which forum the litigants are likely to receive a speedier trial, and, in diversity cases, whether the court trying the case will be familiar with the applicable state law. *Applied Web Systems*, 1991 WL 70893, at *6 (citing *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989); *Coffey*, 796 F.2d at 221).

### 1. Speed to disposition

The most recent statistics regarding judicial caseload indicate that parties in the Eastern District of Wisconsin are only slightly better off than parties in the Northern District of Illinois with respect to how quickly the court will dispose of or try their cases. In the Eastern District of Wisconsin, the median time from the filing of a civil case to its disposition is eight months, and from filing to trial, 20 months. STATISTICS DIV., ADMIN. OFFICE OF THE U.S. COURTS, 1996 FED. CT. MGMT. STAT. 105 (1997). In the Northern District of Illinois, the median time from the filing of a civil case to its disposition is five months, and from filing to trial, 24 months. *Id.* at 101.

Based on these statistics, while a case may be disposed of by motion more quickly in the Northern District of Illinois than it would be in the Eastern District of Wisconsin, it will proceed to trial more quickly in Wisconsin than in Illinois. In short, the interest of justice analysis is essentially neutral; that is, it is not markedly more economic or efficient to have the instant case transferred to the Eastern District of Wisconsin than it is to have it proceed in the Northern District of Illinois.

 

### 2. Familiarity with applicable law

Copyright infringement under the Copyright Act and unfair competition under the Trademark Act are questions of federal law, which both this court and the Eastern District of Wisconsin are equally competent to hear. The two state law claims seem to be based on Illinois law, which this court presumably is more experienced in applying. However, Tensor phrases its state law claims as coming "under the law of several states," including Illinois. Thus, Tensor may have analogous, if not identical, state law claims under Wisconsin law. In any event, familiarity with applicable law tips only slightly in favor of keeping Tensor's case in Illinois.

### 3. Judicial economy

Tensor contends that transfer of this case to the Eastern District of Wisconsin will not serve the interests of judicial economy, because this court is more familiar with the issues raised by the parties than the transferee court would be, and to require a new court to "get up to speed" on this case would constitute a waste of judicial resources.

Other than discovery disputes, withdrawn motions, and this motion to transfer, nothing of substance has occurred in this case in this court. This court is familiar only with the complaint, which is a mere eight pages, and the motion to transfer, which shortly will be disposed of. Furthermore, the issues involved in this case do not appear to be complex. Finally, any discovery that already has been done will have as much relevance, value, and usefulness if this case is litigated in the Eastern District of Wisconsin as it would have if the case remained here.

Consequently, the court does not believe that a new court would require any more time to gain familiarity with and conduct proceedings in this case than would this court.

In sum, while a few factors favor litigating Tensor's claims in this court, most of the factors relating to the convenience of the parties and witnesses make the Eastern District of Wisconsin clearly the more convenient forum for Tensor's cause of action. Tensor still will get its day in court. It simply will get it in the Eastern District of Wisconsin, where most of the allegedly wrongful acts occurred; where many of the relevant evidence may be found; and where the cost to defendants of being haled into court is not so potentially great.

### III.  *CONCLUSION*

For the foregoing reasons, the court grants defendants Coakley and All Press's motion to change venue, and transfers this cause of action to the United States District Court for the Eastern District of Wisconsin, pursuant to 28 U.S.C. § 1404(a).